IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : : CRIMINAL ACTION

v. : :

MIKAL McCRACKEN : : NUMBER 24-03

**OMNIBUS MOTION IN LIMINE**

TO THE HONORABLE JOHN F. MURPHY, JUDGE OF THE SAID COURT:

Mark S. Greenberg, Esquire, counsel for defendant Mikal McCracken, respectfully represents:

Between October 2, 2021 and February 12, 2022, a spate of armed carjackings occurred in the Philadelphia area. Two of the carjackings resulted in the deaths of the victims, G.B. on February 6th, and A.G. six days later on February 12th. The superseding indictment alleges that the carjackers took some of the vehicles to the Parkview Court apartment complex in Yeadon in anticipation for sale and/or shipment to various cities in Africa. McCracken has been charged in twenty-one of the carjackings and the two murders.

Rather than file multiple motions in limine, McCracken files the instant

omnibus motion that identifies potential issues he anticipates may arise at trial[1].

Relevant to these issues are the following rules of evidence:.

> **Fed. R. Evid. 401** (Test for Relevant Evidence) provides:
>
> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.
>
> **Fed. R. Evid. 403** (Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons) provides:
>
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
>
> **Fed. R. Evid. 404(b)(1) & (2)** (Other Crimes, Wrongs or Acts) provides:
>
> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> **Fed R. Evid. 701** (Testimony by Lay Witnesses) provides:

---

[1] Issues surrounding the admissibility of carjackings not charged in the superseding indictment and a firearm seized from McCracken on November 25, 2021 are addressed in McCracken's Response (D.I. 236) to the Government's Notice of Intent to Admit Rule 404(b) Evidence. McCracken has filed a motion to suppress statements he gave in connection with this November 25th firearm seizure. (D.I. 256).

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>> (a) rationally based on the witness's perception;
>> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

**Fed R. Evid. 702** (Testimony by Expert Witnesses) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

**Fed. R. Evid. 801(d)(2)(E)(d)** (Statements That Are Not Hearsay. An Opposing Party's Statement) provides:

> A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

With these Rules in mind, McCracken examines the following potential in limine issues:

**Reference to Military Status of G. B.**

Counts Two and Three of superseding indictment charge McCracken with carjacking and the murder of G.B. who, discovery indicates, was a former United States Marine. None of the elements of the offenses[2] alleged in Counts Two & Three, 18 U.S.C. §§ 924(j)(1) & 2119(3), include proof regarding the military status of the victim. Similarly, there is no allegation in the indictment that McCracken or his alleged confederates carjacked and killed G.B. because of his status as a former Marine. At bottom, the status of G.B. as a former member of the United States Marine Corp, is not relevant on whether McCracken is guilty of Counts Two and Three.

Even assuming relevancy, evidence of G.B.'s status as a former Marine should be excluded under Fed. R. Evid. 403 because the probative value of this evidence is substantially outweighed by its unfair prejudice. Many people, including jurors, hold military veterans in high regard. Admitting evidence that G.B. was a former Marine will evoke a sympathetic reaction in the jurors above and beyond the sympathy naturally arising due to the nature of the offenses themselves. Admission G.B.'s military status creates a real risk of unfair prejudice to McCracken, particularly where such evidence is unnecessary to prove an

---

[2]As well as the aiding and abetting statute, 18 U.S.C. § 2.

element of, or motive to commit, carjacking and murder. Accordingly, any reference to G.B.'s status as a former United States Marine should be excluded from trial.

**Pictures of and References to Firearms in Cell Phone Associated with McCracken** [3]

The cell phone the government alleges McCracken possessed during these carjackings contains, among other content, pictures and references to firearms. McCracken moves to exclude this evidence under Rule 401, Rule 404(b)(1) and Rule 403.

At issue in this prosecution is whether McCracken participated in the multiple carjackings and two murders he has been charges with. That McCracken may have had random pictures of, and references to, firearms in a cell phone the government claims he is associated with is not relevant on whether he participated in the crimes charges unless those firearms can be connected to the crimes charged. Jamison v. Kerestes, 2011 WL 2651573, at *7 (M.D. Pa. July 6, 2011) (trial counsel ineffective in failing to object to evidence of firearms and ammunition unrelated to crime charged). Here, there is no indication that the

---

[3] McCracken notes that the government has not moved, in its Notice seeking admission of Rule 404(b) evidence, for the admission of the cellphone content depicting and referencing firearms.

firearms depicted in the cellphone associated with McCracken were used in any of the carjackings or murders. The depictions and references to firearms are simply not relevant unless the firearms can be connected to the crimes McCracken has been charged with.

Assuming relevancy, this evidence is not admissible under Rule 404(b)(1). The firearm-related pictures and references in a cell phone associated with McCracken would only serve to portray McCracken as a violent individual; an improper purpose under Rule 404(b)(1). <u>United States v. Caldwell</u>, 760 F.3d 267 (3rd Cir. 2014). And, even if admissible under Fed. R. Evid 404(b)(2), the evidence should be excluded under Rule 403 because the probative value of this evidence is substantially outweighed by its prejudicial impact, particularly given the large number of photographic depictions of and references to firearms.

**Interpretation of text, emails and social media messages by law enforcement**

McCracken has filed a companion Motion to Address the Authentication and Depiction of Electronic Content (D.I. 252) , which focuses on the authentication and admissibility of electronic content, such as text messages, emails, and social media messaging, and how that content is to be depicted if it is determined to be admissible. This in limine motion addresses whether a law enforcement witness is allowed to interpret the meaning of electronic content

otherwise deemed to be admissible.

A law enforcement officer is not permitted to interpret common words and phrases in text messages and other electronic content in a situation where the jury is equally capable of drawing its conclusions. United States v. Glenn, 146 F.4th 485, 491 (6th Cir. 2025). By contrast, a law enforcement officer may interpret coded or specialized language a jury is unfamiliar with under Fed. R. Evid. 702. United States v. Gibbs, 190 F.3d 188, 211–13 (3rd Cir. 1999). Such testimony is relatively uncontroversial when it permits a government agent to explain the actual meanings of coded words—that is, when the agent acts as a translator of sorts. It is a different matter when an agent testifies that, in light of the meanings he has attributed to certain conversations, a defendant has played a certain role in, or has certain knowledge about, a conspiracy or other offense. Expert testimony should be excluded when that testimony ventures into areas in which the jury needs no aid or illumination. Id.

McCracken provides the Court with some examples, taken from a December 9, 2022 warrant to obtain information regarding a cellphone associated with E.L., of the types of text exchanges Special Agent Yaeger and other law enforcement

personnel should not be allowed to interpret for the jury[4]. In the first example, SA Yaeger provided an interpretation of a text exchange allegedly between McCracken and Abdul-Hakim that followed the deaths of G.B and A.G.:

> 2/13/2022 @ 1:56:00 p.m. MCCRACKEN: He [J.A.] still ain t sell them jawns yet thou
>
> 2/13/2022 @ 3:31:40 p.m. ABDUL-HAKIM: ?
>
> 2/13/2022 @ 3:32:02 p.m. MCCRACKEN: They got took bro that what I was saying
>
> 2/13/2022 @ 3:32:34 p.m. MCCRACKEN: Even the one me you nd miyn took
>
> 2/13/2022 @ 3:32:39 p.m. ABDUL-HAKIM: With no key
>
> 2/13/2022 @ 3:32:51 p.m. MCCRACKEN: It s a lot to that one, but long story short yeah the law took it bro
>
> 2/13/2022 @ 3:33:03 p.m. MCCRACKEN: **But that jawn a big fucking risk**
>
> 2/13/2022 @ 3:42:53 p.m. ABDUL-HAKIM: Damn ve that the risk

USA_011263 (emphasis supplied) (sic).

> In SA Yaeger's interpretation,
>
> MCCRACKEN was referring to was the possibility that evidence would be found in the car identifying him or his accomplices, or identifying a person

---

[4] It is impossible for McCracken to anticipate every single possible text exchange the government may ask SA Yaeger or other agent to interpret. These exchanges are offered to give the Court a flavor of the types of exchanges the Court should mindful of.

who could lead law enforcement to MCCRACKEN and his accomplices (such as the person who made the key, or a person who subsequently drove the car). When the risk exists that a witness (such as a person who came into possession of a carjacked car after a carjacking) may be able to identify criminal suspects to law enforcement, I know that the suspects who committed the crime sometimes intimidate, harass, physically harm, and even kill people who they believe can provide incriminating information about them to law enforcement or testify about them in judicial proceedings.

Id**.**

In a second example, SA Yaeger recounts a text message allegedly sent by McCracken to Muse shortly after the killing of G.B.:

On February 7, 2022, MCCRACKEN texted MUSE: "Make sure niggas ain't m got nothing from old head , he died so yk that gone be oss."

USA_011261 (sic).

SA Yaeger interpreted this message as follows:

Based on my training and experience and my involvement in this investigation, I believe MCCRACKEN was telling MUSE to make sure that he and others did not have any property belonging to [G.B.], because he died so "you know that's going to be on some shit" (i.e., the focus of an intense law enforcement investigation).

Id.

In a third example, the following two texts were allegedly sent by Muse to McCracken shortly after the murder of A.G. on February 12, 2022:

MUSE texted MCCRACKEN: "Don't say nun else bout [J.A.]." Seven seconds later, MUSE texted: "We don't kno who bro kno."

USA_011272 (sic).

SA Yaeger goes on to write:

> Based on my involvement in this investigation, . . . I believe MUSE was telling MCCRACKEN to avoid speaking around other people about the fact that [J.A.] committed the murder, because one of those people may know [J.A.] and tell him what MUSE or MCCRACKEN said.

Id.

SA Yaeger's interpretation of these text exchanges goes to the very heart of Counts Two and Three of the superseding indictment charging McCracken with the carjacking and murder of G.B., and Counts Four, Five and Six of the superseding indictment charging McCracken with conspiracy to tamper and tampering with a witness [A.G.] by murder. Given the absence of coded language in these and other similar text exchanges, the jury is equally capable to interpreting the import of these types of exchanges[5] and the government is free to offer its

---

[5] In United States v. Jackson, 849 F.3d 540 (3rd Cir. 2017), the Court addressed the standards governing the admission of a layman's interpretation of coded language under Fed. R. Evid. 701. Under Jackson, lay witnesses may testify as to their opinions under Rule 701 so long as the testimony is "rationally based on the witness's perception," is "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 701 means that a witness is only permitted to give her opinion or interpretation of an event when she has some **personal knowledge** of that incident." United States v. Jackson, 849 F.3d at 553 (emphasis supplied). Here, because SA Yaeger was not a participant in the text exchange and therefore has no personal knowledge of it, he is not allowed to provide a lay opinion as to its meaning.

interpretation in closing argument.

**Statements of co-conspirators**

The Court should get a handle on the government's expected efforts to seek admission of statements made by McCracken's co-defendants pursuant to Fed. R. Evid. 801(d)(2)(E), which governs admission of co-conspirator statements.

The Court may admit an alleged coconspirator statement under Fed. R. Evid. 801(d)(2)(E) only after finding by a preponderance of the evidence that:

(1) a conspiracy existed;

(2) the declarant and the person against whom the declaration is offered were members of this conspiracy;

(3) the statement was made during the course of the conspiracy; and

(4) the statement was made in furtherance of the conspiracy.

Bourjaily v. United States, 483 U.S. 171, 175-76 (1987).

According to the superseding indictment, McCracken first entered the conspiracy on November 29, 2021[6] when he, Muse and J.A. allegedly carjacked a 2018 Range Rover from M.K. in the 2500 Block Island Avenue. Superseding Indictment Overt Act #7. Thus, statements made by McCracken's alleged co-

---

[6]In its Notice to admit uncharged carjackings against McCracken, the government alleges that McCracken, Muse and J.A. committed a carjacking on November 27, 2021 at 7626 Raven Place, Philadelphia. Notice at 13 ¶ 6s.

conspirators before November 29th are not admissible against him under Rule 801(d)(2)(E). For example, SA Yaeger recounts the following text message sent by Antonio Walker-Garrett to McCracken and Muse on October 24, 2021, more than one-month before the events of November 29th and (November 27th for that matter):

> I need y'all to realize this not our crib gang can't be leaving this jawn looking crazy. Weed on every counter or bullets & clips laying around this my Umi crib this not my shit gang y'all gotta clean after y'all selves & y'all company it be lil shit but like I said at the end of the day this not out crib.

USA_011287 (sic). This text message from Walker-Garrett to McCracken and Muse is not admissible as the statement of a co-conspirator as McCracken had not yet entered the two conspiracies charged in the superseding indictment. As such, it was not made during the course of, or in furtherance of, the two conspiracies charged in the superseding indictment. Accordingly, statements such as these should be excluded.

Similarly, the government has provided McCracken with a FBI 302 dated May 24, 2023 that memorializes a proffer statement given by A.B., an alleged associate of Moussa. USA_023834. Moussa allegedly told A.B. that A.G., the locksmith, was shot because his fingerprints were in a Toyota RAV4 that had been recently carjacked where the owner was murdered. The FBI 302 does not date this

alleged admission by Moussa. While arguably admissible against Moussa, this statement is not admissible against McCracken under Fed. R. Evid. 801(d)(2)(E) because it was not made during the course of and in furtherance of the two charged conspiracies. McCracken reserves the right to object to the admission of similar statements.

>Respectfully submitted,

>/s/ Mark S. Greenberg

>_____
>MARK S. GREENBERG, ESQUIRE
>Attorney for Defendant