**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **Criminal No. 24-3-5 (JFM)** |
| | **:** | |
| **vs.** | **:** | |
| | **:** | |
| **KAV)N COLEMAN** | **:** | |

**DEFENDANT KAVON COLEMAN'S SENTENCING MEMORANDUM AND OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

Defendant Kavon Coleman, by his undersigned appointed counsel, respectfully submits this Sentencing Memorandum, as well as Objections to the Probation Office's October 21, 2026 Presentence Investigation Report ("PSR"), to assist the Court at Mr. Coleman's sentencing hearing scheduled for October 29, 2026.

## I. BACKGROUND

Mr. Coleman was charged in a Superseding Indictment ("Indictment") by a grand jury on July 24, 2024. On March 19, 2026, a jury returned a guilty verdict as to Mr. Coleman on Count 1 (Conspiracy, 18 U.S.C. § 371) and Counts 39, 40, 42 and 44 (Carjacking and aiding and abetting, 18 U.S.C. §§ 2119(1) and 2) and Counts 41, 43 and 45 (using, carrying and brandishing a firearm

during and in relation to a crime of violence and aiding and abetting, 18 U.S.C. § 924(c)(1)(A)(ii) of the Indictment.

## II. OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

We objected to much of the PSR because many of its paragraphs do not distinguish Mr. Coleman's role in the conspiracy. The PSR makes it appear that Mr. Coleman was involved in criminal conduct with which he was neither charged nor had evidence presented against him at trial. In addition to the carjacking, Mr. Coleman was charged with and convicted of participating in 4 carjackings that occurred over approximately six hours of time from the evening of January 27th into early morning of January 28th of 2022. He was not charged with any other carjackings and did not participate in any of the overt acts regarding the interstate transportation or overseas exportation of the carjacked vehicles. We do ***not*** object to any of the paragraphs related to the facts involving his actual participation in his convictions of carjacking. However, including paragraphs about ***every*** crime and overt act committed during the year long conspiracy that was prosecuted at trial, including two murders, in Mr. Coleman's PSR is very confusing. This is particularly significant given that the Bureau of Prisons, which is frighteningly understaffed, will review the PSR for multiple purposes, including prison designation, ability to participate in prison programs and potential early release from custody. Although the jury convicted Mr. Coleman of conspiracy, his PSR should not contain every single act performed by every member of the conspiracy. It is simply overwhelming for a reader to parse out Mr. Coleman's role given the length and breadth of the PSR. His role as an individual defendant simply gets lost in the PSR.

## III. SPECIFIC OBJECTIONS TO THE PSR

1. We object to this paragraph because Kavon Coleman was not charged in the January 3, 2024 Indictment and should not be included in his PSR. The paragraph is not relevant to him.

2-9. Paragraph 2 is confusing because it appears that all defendants were charged with every bulleted offense which is incorrect. We do not object to any reference to co-defendants.

18-23. We object to these paragraphs describing Jonathan Akubu's role in the conspiracy because they are not relevant to Mr. Coleman's convictions and should not be included in his PSR. This is an example of how the PSR can be edited to single out this particular defendant.

25. We object to the sentence "**They** then sold the stolen cars to buyers who would ship them overseas." (emphasis added). There was no evidence at trial that Mr. Coleman participated in the overseas sale of any carjacked vehicles or had knowledge of same. The sentence should be rewritten or removed.

26. We object to paragraph 26 because it is a summary of trial and does not specify the criminal activity with which Mr. Coleman was convicted of at trial. This paragraph also repeats information contained in other paragraphs of the PSR and is unnecessary and confusing.

27. We object to the sentences: "In addition to the vehicles, the **carjackers** also took victims' personal identification materials to commit fraud crimes. In several cases, the defendants then used the stolen identification materials to commit fraud crimes." (emphasis added). No evidence at trial that showed that Mr. Coleman took any victim's personal identification materials.

28. We object to this paragraph to the extent it states that "[t]he **carjackers** sold many of these carjacked cars to buyers …." (emphasis added). There was no evidence showing that Mr. Coleman sold, or was involved in selling, any carjacked vehicles. Therefore, the paragraph is confusing and misleading as to Mr. Coleman. Again, although he was convicted of the conspiracy, this paragraph incorrectly attributes certain criminal conduct directly to him.

29. We object to the inclusion of this paragraph in Mr. Coleman's PSR because it is a narrative summary of the trial and advances no purpose of the PSR.

31-46. We object to these paragraphs because they do not pertain to Mr. Coleman.

51-59. We object to these paragraphs because they do not pertain to Mr. Coleman.

61. We object to the conclusion that "each [defendant] [was] aware of the entire scope of the conspiracy, exercised equal decision-making authority, and participated equally in the planning and organizing of the offenses." We submit that Mr. Coleman's offense level should be decreased by 4 levels under §3B1.2(a) of the U.S.S.G. because he was a minimal participant in the offense conduct. In determining whether a defendant should receive an adjustment based upon his role in the offense, one must look at the totality of circumstances and the particular facts of each case. The Commentary to §3B1.2 provides a non-exhaustive list of factors to be considered in making the determination which includes: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity.

First, no evidence in the trial record showed that Mr. Coleman understood or knew about the scope or structure of the overall conspiracy. Mr. Coleman did not get involved in the conspiracy until January 2022. He had no involvement in the multiple carjackings committed prior to or after January 2022. Mr. Coleman was convicted of the carjackings that occurred on January 27 and 28 of 2022. After participating in the approximate six-hour carjacking spree, he communicated with one co-defendant, Mikal McCracken, about additional activity that Mr. McCracken was doing but did not personally participate in any subsequent carjacking. Mere words do not equate to action, as the jury was instructed by this Court. Other than Mr. McCracken, he did not communicate with any other co-defendant or co-conspirator. There were no calls or texts from him to any other defendant or Messrs. Akuba and Lee. Neither Jonathan Akubu nor Enimaj Lee knew Mr. Coleman's name, and Mr. Lee could not identify him. Likewise, Mr. Coleman never met or knew about Mr. Moussa and the shipping and sale of carjacked vehicles to Africa.

With respect to the second factor, there was no evidence that Mr. Coleman in any way participated in planning or organizing the criminal activity. He was clearly brought into the conspiracy by Mr. McCracken alone, and Mr. McCracken organized the carjacking offenders. Mr. Coleman certainly had no part in planning or organizing who (or how many people) would participate in the carjackings, when the carjackings occurred, the role a person would play in the carjacking, where the carjacked vehicles were shipped, or how the money from the sale of the vehicles would be divided in the conspiracy. With respect to the third factor, the government presented no evidence that Mr. Coleman made a single decision or exercised any decision-making authority in the conspiracy or the commission of the actual carjackings and had no part in the sale of the vehicles. With respect to the fourth factor, the nature and extent of Mr. Coleman's participation in the commission of the offense conduct was far less than the co-defendants and co-conspirators. Mr. Coleman exercised no discretion in performing any acts in the conspiracy and was not shown to have the ability to do so even if he wanted. With respect to the fifth factor, Mr. Coleman stood to gain the least among the co-defendants and co-conspirators in the year-long conspiracy. He was convicted of a fraction of the approximate 35 carjackings charged in the Indictment and approximate 30 uncharged carjackings or other acts. The government had no way of determining how much money Mr. Coleman made from the carjacking spree, but it was certainly less than the other defendants and conspirators who participated in the conspiracy. We submit that §3B1.2(a) of the U.S.S.G is intended to apply to a defendant whose role was exactly like the one Mr. Coleman had in this conspiracy.

64-69. We object to the inclusion of these paragraphs in Mr. Coleman's PSR. Mr. Coleman was not charged with the conspiracy to murder A.G. The evidence at trial made clear that Mr. Coleman had no involvement in this conspiracy. The victim's family member's statements are certainly relevant to the defendants convicted of this crime, but the statements should not be included in this PSR. There is a danger that the inclusion of these statements in Mr. Coleman's PSR may confuse the BOP with respect to all decisions made regarding Mr. Coleman.

74-76. We object to these paragraphs because Mr. Coleman did not carjack Victim A.K. Therefore, while A.K.'s statements to the Probation Office are relevant to certain defendants, they should not be included in Mr. Coleman's PSR.

77-82. We object to these paragraphs because Mr. Coleman did not carjack Victim N.K. Therefore, while N.K.'s statements to the Probation Office are relevant to certain defendants, they should not be included in Mr. Coleman's PSR.

83-89. We object to these paragraphs because Mr. Coleman did not carjack Victim B.C. Therefore, while B.C.'s statements to the Probation Office are relevant to certain defendants, they should not be included in Mr. Coleman's PSR.

93-98. We object to these paragraphs because Mr. Coleman did not carjack Victim F.F. Therefore, while M.F's statements to the Probation Office are relevant to certain defendants, they should not be included in Mr. Coleman's PSR.

99-104. We object to these paragraphs because Mr. Coleman did not carjack Victim P.P.C. Therefore, while P.P.C.'s statements to the Probation Office are relevant to certain defendants, they should not be included in Mr. Coleman's PSR.

105-112. We object to these paragraphs because Mr. Coleman was not involved in the carjacking and murder of Victim G.B. Therefore, while J.B.'s statements to the Probation Office are relevant to certain defendants, they should not be included in Mr. Coleman's PSR.

158. As set forth in paragraph 61 above, we submit that Mr. Coleman's Total Offense Level should be adjusted downward by **4 levels** pursuant to §3B1.2(a) of the U.S.S.G. Therefore, the Total Offense Level should be **29 not 33**.

212. Based upon the argument set forth in paragraph 61, we submit that the Total Offense Level should be 29 not 33. With a Criminal History Category of III, Mr. Coleman's guideline range should be 108-135 months without the imposition of the mandatory 252 months pursuant to §924(c)(1)(D)(ii). Therefore, the effective guideline range should be **360 to 387 months**.

228. We object to the finding of no factors that would warrant a variance from the applicable sentencing guideline range for Mr. Coleman which is discussed below.

## IV. SENTENCING CONSIDERATIONS

We submit that in this case a guideline sentence as to Mr. Coleman's counts of conviction is not necessary to satisfy the objectives of sentencing and would be overly punitive. In *Pepper v. United States*, 562 U.S. 476 (2011), the Supreme Court emphasized that the guiding principle of federal sentencing is that "the punishment should fit the offender and not merely the crime":

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.

562 U.S. at 487 (*quoting Koon v. United States*, 518 U.S. 81, 113 (1996)); *Williams v. New York*, 337 U.S. 241, 247 (1949) (citations omitted).

Sentencing courts must therefore "consider the widest possible breadth of information about a defendant" to ensure "that the punishment will not suit merely the offense but the individual defendant." *Id.* (*quoting Wassman v. United States*, 468 U.S. 559, 564 (1984)). *See also* 18 U.S.C § 3661 (providing that "***no limitation*** shall be placed on the information concerning background, character, and conduct" of a defendant which may be considered "for the purpose of imposing an appropriate sentence.") (emphasis added).

Section 3553(a) sets forth the following sentencing objectives: the need for the sentence imposed –

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(b) To afford adequate deterrence to criminal conduct;
(c) To protect the public from further crimes of the defendant; and
(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Thus, in "determining the particular sentence to be imposed," the Court must consider the following factors: the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense." *See* 18 U.S.C. § 3553(a)(1)-(7).

In arriving at an ultimate sentence, the sentencing court may not treat a Guidelines sentence as inherently superior to, or more reasonable than, a non-Guidelines sentence. *See Nelson v. United States*, 555 U.S. 350, 129 S. Ct. 890, 891 (2009). ("The Guidelines are not only not mandatory on sentencing courts; they are not to be presumed reasonable.") *Gall v. United States*, 552 U.S. 38, 50 (2007) (sentencing courts "may not presume that the Guidelines range is reasonable."). Nor can it refuse to consider non-Guidelines sentences in ordinary cases. *Pepper*, 562 U.S. at 497 (*citing Gall*, 552 U.S. at 47).

Moreover, the Court may, pursuant to the goals of sentencing set forth at 18 U.S.C. § 3553(a), vary from the Guidelines because of case-specific considerations, policy reasons or both. *See Spears v. United States*, 555 U.S. 261, 264-5 (2009). As the Supreme Court has said again and again since its decision in *Booker*, judges may impose a sentence that is sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing, to consider all the characteristics of the offender and circumstances of the offense and to reject advisory Guidelines that are not based on national sentencing data and empirical research. *See United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 551 U.S. 338 (2007); *Spears v. United States*, 555 U.S. 261 (2009); *Nelson v. United States*, 555 U.S. 350 (2009); *United States v. Tomko*, 562 F.3d 558, 560-1 (3d Cir. 2009). Indeed, District Courts' exercise of their independent discretion furthers the process of "continuous evolution" contemplated by the Guidelines themselves. *Rita*, 551 U.S. at 350.

Finally, the Court is free to disagree with the Guidelines on policy grounds alone – even where those Guidelines were created pursuant to Congressional directive. *See Pepper*, 562 U.S. at 490 ("[O]ur post-Booker decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on disagreement with the Commission's views."). In short, in arriving at a final sentence, the Court should consider the "fullest information possible concerning the defendant's life and characteristics." *Pepper*, 562 U.S. at 480 (internal quotation marks and citations omitted), and impose the sentence that is minimally necessary to fulfill the goals of sentencing for the defendant.

## V. STATUTORY FACTORS APPLIED TO THIS CASE

The Court is charged by Congress with imposing a sentence that is "sufficient, but not greater than necessary to . . ." reflect the sentencing factors set forth in U.S.C. § 3553(a). *Booker*, 125 S. Ct. 738 (2005).

### A. The Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The nature and circumstances of the crimes Mr. Coleman was convicted of were serious and violent, and the carjacked victims' testimony was exceedingly heart-breaking. At sentencing, however, the Court must not only consider the crimes but also the person who committed them. Mr. Coleman was 18 years old when he joined the carjacking conspiracy for less than 24 hours, and that conduct will result in the loss of his freedom for years to come. While his mother and certain siblings have always been a part of his life, he has never had a relationship with his father. His mother, Sharlita Drayton, worked full-time to take care of her children and her own mother. Mr. Coleman also has a particularly close relationship with his older brother Shawn Drayton who attended nearly every day of trial. Even though he had family members who loved him, Mr. Coleman unfortunately turned to the streets to make money, following the path of many

teenagers and young black men born in impoverished urban areas. He dropped out of high school in 11th grade and instead of getting gainful employment, he hung around the neighborhood with friends and had no real direction or purpose.

Mr. Coleman's daughter (with Amiah Day) Seven has made Kavon think more about his life's path, especially because she will grow up without his presence and support. Seven turned four years old on October 21st. Kavon's mother is currently raising Seven solely on her own in her home. She brings Seven to visit Mr. Coleman in prison so that he can be part, to some degree, of her childhood. He hopes to maintain a relationship with Seven and, one day, be part of her life outside of prison. His daughter is giving him something to live for in the future. This is important for Mr. Coleman who grew up without his own father.

### B. The Need for the Sentence Imposed to Promote Certain Statutory Objectives

1. *To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

A sentence within the advisory Guideline range is not necessary to accomplish the above statutory objectives. With regard to the need for the sentence to reflect the seriousness of the offense and provide just punishment, a below-guidelines sentence will accomplish these goals. Mr. Coleman has and will continue to spend a significant amount of time in prison and has forfeited his right to live as an independent young adult and make decisions people of his age look forward to making. Whenever he is released, he will re-enter society with a criminal history of serious and violent federal felonies on his record. The amount of time spent in prison, along with his criminal background, will make it extremely difficult for him to find gainful employment in a society that will rapidly change and advance during his incarceration. Although he will hopefully take advantage of available programs, adapting to what will certainly be a

different world outside of prison will be a challenge. Thus, we submit that a sentence below that advisory Guidelines range will adequately convey the seriousness of the offense, promote respect for the law and provide just punishment.

2. *To afford adequate deterrence to criminal conduct.*

A sentence within the advisory Guideline range is greater than necessary to promote general deterrence as well as deter Mr. Coleman from future criminal activity. Mr. Coleman is already serving a 121 month sentence, and 5 years of supervised release, for another unrelated offense to which he entered a guilty plea. With the mandatory minimum sentence he will serve on the §924(c) counts here, Mr. Coleman has a long road ahead of him. A Guidelines sentence is simply unnecessary to achieve any deterrence goal.

Courts have recognized that "[t]here is no justice in imposing a sentence merely to make an example out of a defendant. *United States v. Musgrove*, 647 Fed, Appx. 529, 532 (6th Cir. May 4, 2016). A punishment should fit the offender, not just the crime. *See id.* Equally important to these principles is the acknowledgment that the criminal justice system is not best served by incarcerating a defendant for as long as possible- *just for the sake of doing so*. Sentencing Mr. Coleman to an advisory Guidelines range would do just that.

With respect to general deterrence, there is no evidence that longer prison sentences provide a more significant deterrent effect. The overwhelming consensus of studies, including one conducted by the National Institute of Justice, have found that "the certainty of being caught is a vastly more powerful deterrent than the punishment." *See* "Five Things About Deterrence," *National Institute of Justice* (June 2016) (study commissioned by the Department of Justice). https://www.nij.ojp.gov. The National Resource Center similarly found that the deterrent value of long sentences is minimal, as the decision to commit a crime is more likely influenced by the

certainty and swiftness of punishment than by the severity of the criminal sanction. *See* "The Growth of Incarceration in the United States: Exploring Causes and Consequences," National Research Council (Committee on Law and Justice) at p.345, Washington, D.C.: The National Academic Press (2014). https://nap.nationalacademics.org.

Research studies and projects conducted by institutions and organizations across the political spectrum have concluded that locking up a defendant for as long as possible does not accomplish the goal of general deterrence. We are, of course, not arguing that the Court need not take deterrence into account, but incarcerating a defendant for a longer period of time does not mean that more people will be deterred because of it. If that was true, we might not have such an overcrowded prison population.

3. *To protect the public from further crimes of the defendant.*

There is no doubt that Mr. Coleman will be incarcerated for a very long time because of the consecutive mandatory minimum sentences that must be imposed on certain counts. He will not again become a member of society and even walk in the public domain for many years. He will be away from his mother, siblings, and most importantly, his daughter. He will hopefully reform in prison and never return after being incarcerated for such a substantial period of his life. After spending so many years being locked up, Mr. Coleman is undoubtedly going to come out as a different person than when he first went in, regardless of the decisions he made.

4. *To provide the defendant with needed educational or vocational training medical care, or other correctional treatment in the most effective manner.*

Mr. Coleman is exactly the type of person who can benefit from educational and vocational training while incarcerated. He has started working on his General Equivalency Diploma, but despite emails from undersigned counsel to the BOP Legal Department, the status

of his progress is unknown. If he does not yet have a GED, he will have time to get it while incarcerated. He also has no work experience. The federal system certainly offers many programs that Mr. Coleman can take advantage of that will better prepare him for his re-entry to society after serving his sentence. A Guidelines range sentence is not necessary to accomplish these goals. Given Mr. Coleman's age, he still has a shot at reentering society and becoming a productive member of it. We respectfully request that the Court grant him that shot.

## VI. THE 18 U.S.C. § 3553(a) FACTORS WARRANT A DOWNWARD VARIANCE BELOW THE ADVISORY GUIDELINES RANGE

The advisory Guideline sentence for Counts 1, 39, 40, 42 and 44 recommended in this case conflicts with the directive of 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient but not greater than necessary." *Kimbrough*, 128 S. Ct. at 564 (holding that the district court did not abuse its discretion when it imposed a lesser sentence based on its disagreement with the Sentencing Commission's policy considerations and properly imposed a below-guideline sentence). In many cases, including this one, the Sentencing Guidelines do not fully implement the statutory objectives of sentencing. *Rita*, 127 S. Ct. at 2473. Moreover, the Third Circuit has recognized that a non-guideline sentence is authorized and appropriate in the post-*Booker* sentencing world based upon a district court's analysis of the §3553(a) factors, even under circumstances where the grounds for a variance would not support a departure under the Sentencing Guidelines. *See United States v, Howe*, 543 F.3d 128 (3d Cir. 2008).

There are several factors which warrant a substantial variance from Mr. Coleman's advisory sentencing Guidelines range on Counts 1, 39, 40, 42 and 44[1]. In sentencing Mr.

[1] As explained above, we submit that Mr. Coleman should receive a 4 point downward adjustment for his minimal participant role in the offense conduct under the Guidelines. If for any reason, the Court decides not to grant this

Coleman on these Counts, the Court may take into consideration that Counts 41, 43 and 45 each carry a mandatory minimum of 7 years. In *Dean v. United States*, 581 U.S. 62 (2017), the Supreme Court held that nothing in the statute setting mandatory minimum sentences for using or possessing a firearm in connection with a violent or drug trafficking crime restricts the authority of sentencing courts to consider a sentence imposed under the mandatory minimum statute when calculating a just sentence for the predicate count. In *Dean*, the defendant faced a lengthy mandatory term of imprisonment pursuant to § 924(c) charges and asked the district court to impose a day of incarceration for his underlying robbery offense, The district court agreed that such a sentence served the interests of justice but imposed a longer sentence for the robbery offense on the belief that it did not have the authority to do otherwise, and the Eighth Circuit affirmed the district court's imposition of sentence. The Supreme Court reversed and remanded the case, stating that "[n]othing in the law requires such an approach." *Id.* at 68. *See also United States v. Meehan*, 741 Fed, Appx. 864 (E.D.P.A.) (2018) (Slomsky, J.) (recognizing holding of *Dean*).

The Supreme Court made clear that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." *Id.* at 69. "Whether the sentence for the predicate offense is one day or one decade, a district court does not violate the terms of § 924(c) so long as it imposes the mandatory minimum 'in addition to' the sentence for the violent . . . crime." *Id.* The Court explained that the § 3553(a) factors are used to set both the length of separate prison terms and an aggregate prison term comprising

downward adjustment, we submit that this same argument should be considered for a variance from an advisory guidelines range sentence.

separate sentences for multiple counts of conviction. *See id.* at 67. Therefore, this Court in imposing a sentence on Counts 1, 39, 40, 42 and 44, may consider the mandatory sentence it must impose on Counts 41, 43 and 45. Because Mr. Coleman will receive 252 months on the § 924(c) Counts, a Guidelines sentence on the remaining Counts would be punitive.

We also submit that a variance from the Guidelines is warranted because his Criminal History Category of "III" overstates his prior conduct. Two points were added to his criminal history score because of an incident at a public school that occurred when he was 14 years old. Therefore, his juvenile record essentially places him in a category "III" rather than "II." In 2016, when Kavon was 14, he was charged with conspiracy to commit simple assault and criminal conspiracy in the Philadelphia Court of Common Pleas. PSR at ¶159. The adjudication was deferred and Kavon was placed on interim probation. *Id.* He violated the conditions of his probation and was placed in a drug and alcohol program, received individual and group counseling for anger issues, grief, loss, depression and family relationships and then placed in a juvenile facility after missing school and testing positive for marijuana. PSR at ¶159. Because he served more than 60 days in a juvenile facility and was discharged from commitment in 2018, within five years of his prior federal crime, he received two additional points on his criminal history. U.S.S.G. § 4A.1.1(b).

It is significant that the incident that places Mr. Coleman into a higher criminal history category occurred when he was 14 years old. *See Roper v. Simpson*, 543 U.S. 541, 569 (2005) ("[A]s any parent knows and as the scientific and sociological studies . . . tend to confirm, '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth often more than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.'') (citations omitted). A juvenile delinquency

adjudication resulting in a higher criminal history should be considered for purposes of a variance. As is evident from Mr. Coleman's behavior, he was undergoing developmental issues during his teenage years and received counseling. He experienced both periods of adjustment and rebellion. Significantly, he never refused or even objected to counseling for a myriad of emotional problems. However, his path of "one step forward, two steps back" was a long one, and he earned two criminal points because of it. His "inconsistent behavior" (PSR at ¶159) as a teenager, however, should be taken into consideration for purposes of his criminal history category and punishment.

In deciding whether to grant a variance, the Court may also take into consideration that Mr. Coleman has suffered with mental and emotional health issues from the time he was young until current day. As the PSR correctly notes, Mr. Coleman, as a juvenile, was diagnosed with conduct disorder and other specified trauma stressor related disorder in 2017 for which he received counseling but no medication. PSR at ¶190. Moreover, in 2024, the BOP diagnosed him with unspecified depressive disorder and anxiety disorder. PSR at ¶192. He was prescribed mirtazapine for treatment of depression. In June 2026, the BOP prescribed Mr. Coleman Fluoxetine to treat depression. Mr. Coleman's mental and emotional state was further by his illicit substance abuse. PSR at ¶190.

Finally, the Probation Office correctly notes in paragraph 213 of the PSR that the Court may impose a sentence in the instant case to run concurrently, partially concurrently, or consecutively to the defendant's undischarged term of imprisonment pursuant to USSG § 5G1.3(d). *See United States v. Ray*, 706 Fed.Appx. 755 (3d Cir. 2017 (recognizing applicability of § 5G1.3(d)). We respectfully submit that any term of imprisonment imposed by the Court on

Counts 1, 40, 42 and 44 run concurrently, or partially concurrently, to the 151 month sentence he Mr. Coleman is currently serving,

## VII. CONCLUSION

For all of the reasons set forth above, we respectfully submit that the Court consider all of the § 3553(a) factors and grant Kavon Coleman a substantial downward variance from his advisory sentencing guidelines range and impose a sentence on Counts 1, 39, 40, 42 and 44 to run concurrently to with the 121 month sentence he is currently serving pursuant to §5G1.3(d).

Respectfully submitted,

MONTGOMERY McCRACKEN
WALKER & RHOADS LLP

/s/ Terri A. Pawelski___
Terri A. Pawelski
tpawelski@mmwr.com
1735 Market St., 20th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 816-7636
*Counsel for Kavon Coleman*

Dated: October 23, 2026

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Defendant's Sentencing Memorandum and Objections to Presentence Investigative Report was served on all counsel of record via the ECF system.

/s/ Terri A. Pawelski

Dated: October 23, 2026